# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

ANDRE L. MAYFIELD, )
)
Petitioner, )
) NO. 3:06-00641
v. ) JUDGE HAYNES
)
HOWARD CARLTON, Warden, )
)
Respondent. )

## M E M O R A N D U M

Petitioner, Andre L. Mayfield, filed this pro se action under 28 U.S.C. § 2254 for writ of

habeas corpus, to set aside his convictions of aggravated rape, aggravated kidnapping and

aggravated robbery for which he received a sentence of 50 years. After review of the petition, the

Court appointed the Federal Public Defender who filed two amended petitions. (Docket Entry

Nos. 25 and 37). In the second amended petition,[1] Petitioner asserts the following claims: (1)

that the trial court lacked the authority to allow Petitioner to withdraw his plea; (2) that the trial

court improperly used Petitioner's prior convictions in imposing the 50 years sentence; (3) that

the trial court's increase of his sentence, after the withdrawal of his guilty plea, was arbitrary and

vindictive; (4) that Petitioner was improperly classified as a multiple rapist; (5) that Petitioner's

---

[1]The Federal Rules of Civil Procedure can apply in a habeas proceeding. Mayle v. Felix, 545
U.S. 644, 649 (2005); Rule 6(a), Rules Governing Section 2254 Cases. Under Fed. R. Civ. P. 15
(a), the filing of an amended complaint supersedes the prior complaint. Clark v. Tarrant County,
798 F.2d 736, 740-41 (5th Cir. 1986). Thus, the Court deems the second amended petition to
supersede the pro se petition and the first amended petition. The Court will address only those
claims briefed on the second amended petition.

Case 3:06-cv-00641   Document 100   Filed 09/15/11   Page 1 of 35 PageID #: 2244

convictions as a multiple rapist violated the Double Jeopardy Clause of the Fifth Amendment; (6) that the trial court denied Petitioner's right to testify at his trial; (7) Petitioner's trial counsel provided ineffective assistance; (8) Petitioner's sentence is illegal under state law and violated Petitioner's crystalized expectations based upon his prior sentence; (9) Petitioner's sentence violates Blakely v. Washington, 542 U.S. 296 (2004); (10) the trial court's refusal to sever the offenses for trial violated Petitioner's due process rights; and (11) that the State violated Brady v. Maryland, 373 U.S. 83 (1963) when the prosecutor failed to disclose a police report with exculpatory statements by one of the rape victims.

In earlier proceedings, the Court found that Petitioner had an adequate state remedy on his Brady claim and this action was administratively closed to allow Petitioner to exhaust that state remedy. (Docket Entry No. 85). Plaintiff exhausted that remedy and on January 12, 2011 filed his motion to reopen this action (Docket Entry No. 91) that the Court granted. (Docket Entry No. 93).

Before the Court is the Respondent's renewed motion to dismiss (Docket Entry No. 70), contending that Petitioner's exhausted claims lack merit and that his remaining claims are procedurally defaulted for Petitioner's failure to present those claims to the state courts. Petitioner filed a response and supplemental brief, contending, in sum, that his claims justify habeas relief and that his claims also warrant discovery and an evidentiary hearing (Docket Entry Nos. 75 and 92), to which Respondent filed a reply (Docket Entry No. 96).

### A. Petitioner's Requests for Discovery and Evidentiary Hearing

As to these requests, from review of the file, the Court granted Petitioner's motions to expand the record with the filing of several exhibits (Docket Entry Nos. 26 and 27) and Petitioner's motion for the production of documents. (Docket Entry Nos. 86 and 87). The Court also granted Respondent's motion to file transcripts of Petitioner's trial and post- conviction proceedings as well as the record of the recently concluded state proceedings on Petitioner's Brady claims. (Docket Entry Nos. 72, 81 and 96). Petitioner also filed a transcript of the state prosecutor's opening statement. (Docket Entry No. 92-1).

Rule 6(a) of the Rules Governing Section 2254 Actions provides a good cause standard for discovery. A judge may for good cause authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery.

In Bracy v. Gramley, 520 U.S. 899, 908-909 (1997), the Supreme Court described the standard for good cause under Rule 6(a) as "'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry.'" (quoting Harris v. Nelson, 394 U.S. 286, 300 (1969)). Accord Williams v. Bagley, 380 F.3d 932, 974 (6th Cir. 2004).

In addition, the law in this Circuit as stated in Stanford v. Parker, 266 F.3d 442 (6th Cir. 2001) is that there is not an automatic right to discovery in a habeas action.

> Habeas petitioners have no right to automatic discovery. A district court has discretion to grant discovery in a habeas case upon a fact specific showing of good cause under Rule 6. See Bracy v. Gramley, 520 U.S. 899, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997); Byrd v. Collins, 209 F.3d 486, 515-16 (6th Cir. 2000) . . . The burden of demonstrating the materiality of information requested is on the moving party. See Murphy v. Johnson, 205 F.3d 809, 813-15 (5th Cir. 2000).

3

The district court applied the correct legal standard in light of the evidence and the state court proceedings. The discovery sought by Stanford would not resolve any factual disputes that could entitle him to relief, even if the facts were found in his favor. To the contrary, Stanford's requested discovery, when reviewed in light of the recently examined record, falls more in the category of a fishing expedition. We will not find that a district court erred by denying a fishing expedition masquerading as discovery.

Id. at 460.

Discovery requests must also be considered in the context of 28 U.S.C. § 2254(e)(1) on

the presumptive correctness of state court finding.

Because Petitioner failed to rebut the statutory presumption of correctness that the federal habeas court must award to the factual findings of the state courts, the district court properly concluded that it was required to defer to those factual findings. Furthermore, given this conclusion, we would be hard-pressed to say that the district court abused its discretion in denying further discovery on these issues.

Byrd 209 F.3d at 516. See also Moen v. Czerniak, No. Civ.02-10-JE, 2004 WL 1293920 at *1

(D. Or. June 10, 2004) ("Discovery under Rule 6 must be considered in light of the provisions of

28 U.S.C. 2254(e)(2) which limit the scope of federal habeas corpus review to the state court

record except [in] certain specified circumstances. . .").

As to Petitioner's request for an evidentiary hearing, in the Antiterrorism and Effective

Death Penalty Act, ("AEDPA"), Congress redefined the standards for conducting an evidentiary

hearing in a habeas action:

If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that - (A) the claims relies on - (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts

4

underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense.

28 U.S.C.§ 2254(e)(2).

In Williams v. Taylor, 529 U.S. 420 (2000), the Supreme Court explained that if the petitioner demonstrated diligence, then the inquiry ends, but if there is an issue of diligence the focus is on whether the petitioner or his counsel knew of the matters at issue and failed to pursue the matter:

> The question is not whether the facts could have been discovered but instead whether the prisoner was diligent in his efforts . . . Diligence for purposes of the opening clause [of Section 2254(e)(2)] depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court; it does not depend, as the Commonwealth would have it, upon whether those efforts could have been successful.

> *   *   *

> For state courts to have their rightful opportunity to adjudicate federal rights, the prisoner must to diligent in developing the record and presenting, if possible, all claims of constitutional error.  If the prisoner fails to do so, himself or herself contributing to the absence of a full and fair adjudication in state court, § 2254(e)(2) prohibits an evidentiary hearing to develop the relevant claims in federal court, unless the statute's other stringent requirements are met.  Federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings.

> *   *   *

> Given knowledge of the report's existence and potential importance, a diligent attorney would have done more.  Counsel's failure to investigate these references in anything but a cursory manner triggers the opening clause of § 2254(e)(2). As we hold there was a failure to develop the factual basis of this Brady claim in state court, we must determine if the requirements in the balance of § 2254(e)(2) are satisfied so that petitioner's failure is excused . . . upon a showing, by clear and convincing evidence, that no reasonable factfinder would have found petitioner guilty of capital murder but for the alleged constitutional error.

Id. at 435, 437, 439-440.

Independent of § 2254(e)(2), the Court also has the inherent authority to set an evidentiary hearing in a habeas action. Abdur'Rahman v. Bell, 226 F.3d 696, 705-06 (6th Cir. 2000). "[A] district court does have the inherent authority to order an evidentiary hearing even if the factors requiring an evidentiary hearing are absent." Id. at 705. Such hearings are set "to settle disputed issues of material fact." Id. at 706. Yet, "if [the court] concludes that the habeas applicant was afforded a full and fair hearing by the state court resulting in reliable findings, [the court] may, and ordinarily should accept the facts as found in the hearing. But [the court] need not. In every case [the court] has the power, constrained only by [its] sound discretion, to receive evidence bearing on the applicant's constitutional claim." Id. (quoting Townsend v. Sain, 372 U.S. 293, 318 (1963)). This authority extends to determine factual issues or if an inadequate record exist, on a procedural default controversy. Alcorn v. Smith, 781 F.2d 58, 60 (6th Cir. 1986).

Even prior to ADEA, a habeas petitioner had to show cause for his failure to develop the state record or that "a fundamental miscarriage of justice would result from failure to hold an evidentiary hearing," Keeney v. Tamayo-Reyes, 504 U.S. 1, 11-12 (1992). In a word, the distinction between § 2254(e)(2) and the Court's inherent authority to order a hearing is "when a petitioner is entitled to a hearing [under § 2254(e)(2)] . . . versus whether a district court has the inherent discretion to order a hearing [that] is still intact following Williams." Abdur'Rahman, 226 F.3d at 706. Evidentiary hearings have been held to be appropriately denied where the habeas petitioner "has not shown that his . . . claims would result in no reasonable factfinder finding him guilty of the underlying offenses . . . We therefore conclude that the district court did

6

not abuse its discretion by declining to conduct an evidentiary hearing." Abdus-Samad v. Bell, 420 F.3d 614, 626-27 (6th Cir. 2005).

Moreover, the Supreme Court and the Sixth Circuit have observed that: "The state court is the appropriate forum for resolution of factual issues in the first instance, and creating incentives for the deferral of factfinding to later federal-court proceedings can only degrade the accuracy and efficiency of judicial proceedings." Keeney, 504 U.S. at 9. Accord Byrd, 209 F.3d at 516-17 (6th Cir. 2000) (quoting Keeney, 504 U.S. at 9). More recently, the Supreme Court stated "[W]e have made clear that whether a state court's decision was unreasonable must be assessed in light of the record the court had before it". Holland v. Jackson, 542 U.S. 649, 652 (2004).

Here, the records of the state proceedings and discovery materials filed pursuant to the Court's Orders are deemed sufficient to decide the merits of Petitioner's claims. Petitioner's Brady claim rests on a document that Petitioner compares to a victim's trial testimony to show the materiality of the nondisclosed police report. The Court concludes that further discovery and an evidentiary hearing are unnecessary to decide Petitioner's claims.

## B. Procedural History

On May 11, 1993, Petitioner was indicted on three counts of aggravated robbery, three counts of aggravated kidnapping, and three counts of aggravated rape. Mayfield v. State, 2006 WL 2380615 at *1 (Tenn. Ct. Crim. App. Aug. 16, 2006). On July 15, 1993, Petitioner pled guilty to three counts of aggravated rape and one count of aggravated robbery for a sentence of twenty (20) years with release eligibility at thirty percent of his sentence. Id. Later, based upon a

7

report from the Tennessee Department of Correction, the State Attorney General's office notified the state trial court that Petitioner's sentence, based upon his plea agreement, violated Tennessee law in that Petitioner's convictions required imprisonment at one hundred percent of his sentence for Petitioner's underlying crimes. Id. After affording Petitioner a conference with his counsel and hearing, the state trial court allowed Petitioner to withdraw his guilty plea. Id. Petitioner was tried on his original charges except that one rape charge was severed. Id.

After a trial, the jury found Petitioner guilty of two counts of aggravated kidnapping and aggravated robbery, aggravated rape and rape for which the trial court sentenced Petitioner to fifteen (15) years for aggravated kidnapping, twenty (20) years for aggravated rape and fifteen (15) years for rape for an effective sentence of fifty (50) years at one hundred percent. Id. On appeal, the Tennessee Court of Criminal Appeals affirmed Petitioner's conviction, but modified Petitioner's sentence to a Range II Multiple Rapist. State v. Mayfield, 2001 WL 637700 at *14 (Ten. Ct. Crim. App. June 20, 2001). The Tennessee Supreme Court denied Petitioner's application for permission on October 29, 2001. Id.

Petitioner filed several State post-conviction and habeas petitions[2] that the state courts denied, but in his appeal of principal post-conviction petitions, the Tennessee Court of Criminal

_____

2 Mayfield v. Morrow, 2009 WL 28070172 (Tenn. Ct. Crim. App. Sept. 8, 2009) (dismissal of appeal on sentencing claim as previously determined); Mayfield v. State, 2006 WL 1491630 (Tenn. Ct. Crim. App. May, 31, 2006) (denial of post-conviction relief on robbery, burglary and receiving stolen property convictions as time-barred); Mayfield v,. Carlton, 2005 WL 1798636 (Tenn. Ct. Crim. App. July 29, 2005 (affirming denial of State habeas petition with claims of an invalid sentence on Count 3, of the need for a separate indictment and that the trial court lacked authority to modify his original sentence); and Mayfield v. State, 2005 WL 1683498 (Tenn. Ct. Crim. App. July 18, 2005) (lack of jurisdiction on sentencing claims).

8

Appeals affirmed the trial court's order of dismissal.  Mayfield v. State, 2006 WL 2380615

(Tenn. Ct. Crim. App. Aug 16, 2006).  As stated earlier, while this action was administratively

closed, Petitioner filed another state action on his Brady claim that state prosecutors withheld a

police report that Petitioner argues, contains exculpatory evidence, namely impeaching one rape

victim's trial testimony.  The Tennessee trial and appellate courts rejected that claim.  Mayfield v.

State, 2010 WL 4545822 (Tenn. Ct. Crim. App. Nov. 12, 2010).

## C.  Review of the State Record

### 1.  Findings of Fact

On Petitioner's direct appeal, the Tennessee Court of Criminal Appeals made lengthy

factual findings on the circumstances of Petitioner's convictions for aggravated kidnappings,

robberies and rapes:

> At trial, Clara Bumphus, one of the two victims in this case, testified that at
> midday on October 24, 1992, she walked to a mechanic's shop near her home to
> pick up her car, which was being repaired. When she arrived at the shop, she
> discovered that her car was not ready, so she walked to a nearby gas station, where
> she purchased food and a soft drink. She then began walking home through an
> alley. Bumphus testified that while she was walking home, a man, whom she later
> identified as the Defendant, stepped into the alley from behind a fence,
> approached her from behind, and placed a pistol to her side. When she felt the
> gun, Bumphus told him, "Please don't hurt me.... Please don't kill me because I
> have children."
>
> According to Bumphus, the Defendant forced her up the alley, still holding the
> gun to her waist, and into an abandoned house. There, he told her, "Shut up. Don't
> look at me. I'll hurt you.... I'll kill you." He then ordered her to lie down on the
> floor, removed her underclothes, and penetrated her vaginally with his penis.
> During the rape, the Defendant held the gun in his hand and pointed it towards
> Bumphus' face. Afterwards, the Defendant and Bumphus got up, and the
> Defendant emptied Bumphus' purse onto the floor. He took $51 and left the
> remaining contents of the purse. Bumphus testified that the Defendant then placed
> the gun in his pocket and escorted Bumphus to a nearby bus stop, where he

9

released her and boarded the bus. She reported that the entire incident spanned approximately thirty-five to forty minutes.

Bumphus testified that immediately after the Defendant departed, she walked to her sister's apartment, where she "cleaned up." While at her sister's apartment, she noticed a patrol car outside, "ran out in the middle of the street," and "waved the officer down." She reported what had happened to the officer. Bumphus stated that the officer took her to the house where the rape occurred, and they found some of her belongings there, which had fallen out of her purse when the Defendant took her money. Other officers soon arrived, and Bumphus was transported to the hospital for an examination.

Bumphus testified that her attacker did not disguise his appearance on the day of the rape. She stated that although he continually admonished her not to look at him, she remembered his face clearly. She recalled that she gave a detailed description of the Defendant's appearance to the police and aided the police in constructing a composite drawing of her attacker. The drawing was introduced as an exhibit at trial. Bumphus also testified that she attended a police line-up at which she identified the Defendant as her attacker.

Officer Charles R. Williams of the Metropolitan Police Department testified that Clara Bumphus approached him on foot on October 24, 1992 while he was "doing a routine patrol" at the housing project where she lived. When he stopped his vehicle, she told him that she had been robbed and raped by a "male black," and she related details of the incident to him. Williams recalled that Bumphus appeared to be in a state of shock when she stopped him. Williams testified that he took Bumphus to the abandoned home where she claimed the rape had occurred, and at the house, they found items on the floor that had fallen out of Bumphus' purse.

Sergeant Kim Gooch of the Metropolitan Nashville Police Department testified that she assisted Clara Bumphus in creating a composite drawing of her attacker. Gooch also testified that she participated in a physical line-up with Bumphus on November 10, 1992. She reported that the victims participating in the line-up were not allowed to converse with one another during the process. Detective Suzanne Stephens of the Metropolitan Nashville Police Department testified that she also participated in the line-up conducted on November 10, 1992. She stated that at the line-up, Bumphus identified the Defendant as her attacker.

Officer Jeff Burnette of the Metropolitan Nashville Police Department testified that in 1992, he had an opportunity to view the composite drawing of Bumphus' attacker. Burnette stated that when he saw the drawing, he called the police

10

department's sex abuse division and told Detective Stephens, an employee of that division, that he knew an individual who resembled the composite drawing. Burnette identified the individual as the Defendant.

The second incident in this case involved victim Rosheka Alexander, who also testified at trial. Alexander recalled that on October 28, 1992, when she was seventeen years old, she was walking home from a friend's house when a man on a bike, whom she later identified as the Defendant, approached her. She stated that initially, she thought the Defendant seemed friendly, so she told him her name, and he identified himself as "Dray." However, Alexander testified that the Defendant soon "pulled out a gun" and threatened to "blow [her] brains out" if she did not follow him. She continued to walk with him while he asked her a number of questions, such as how old she was, where she lived, and what her phone number was. Fearful, Alexander answered the questions and followed the Defendant up an alley to an empty house. As she and Defendant approached the house, however, Alexander turned to run. The Defendant grabbed her from behind, put the gun against her back, and told her that "if [she] tried to run again, he was going to blow her brains out."

According to Alexander, the Defendant dragged her into the house, "threw [her] on the carpet," forced her to remove her skirt, and raped her vaginally with his penis. Alexander testified that after the rape, while she cried, the Defendant asked her, "Did I break your virginity?" to which she responded, "Yes, you did." Alexander stated that this appeared to please the Defendant, and he "got back on [her]." In an effort to escape, she told him that she saw someone at the window of the house, which caused him to stand up. However, when pressed by the Defendant, she admitted that she had not seen anyone at the window. She stated that this angered the Defendant, and he "started choking [her] ... [and] slapping [her] head on the floor...." Alexander testified that the Defendant then climbed out of the window, attempted to help her out of the window, and got onto his bike. Before leaving the scene, the Defendant handed Alexander a piece of paper on which he had apparently written his name and phone number. The Defendant then departed on his bicycle, and Alexander ran home, where she immediately took a shower.

Alexander testified that she told no one about the rape until a teacher at school the following day questioned her about her demeanor. Alexander stated that she "didn't really want to talk about it at first," but eventually told her teacher what had happened. A police officer was summoned to her school, and Alexander showed the officer where the rape had occurred. She was later taken to the hospital for testing.

11

Alexander recalled that the house where she was raped had been freshly painted and carpeted shortly before the rape occurred. She also recalled that the Defendant did not attempt to disguise his appearance at the time of the rape, and she stated that she had a chance to look at his face. She remembered that "[h]e had gold on his teeth." Alexander aided police officers in assembling a composite drawing of her attacker, and the drawing was introduced as an exhibit at trial. In addition, Alexander participated in both a photographic line-up and a physical line-up prior to trial. On both occasions and at trial, she identified the Defendant as her attacker.

Lieutenant Thomas Jones of the Metropolitan Nashville Police Department testified that in 1992, he was employed as a crime scene technician. He recalled that on October 29, 1992, he was called to investigate the house in which Rosheka Alexander claimed to have been raped. He stated that he was able to lift fingerprints from the freshly-painted windowsill of the room where Alexander reported the rape had occurred. Officer Danny Morris, a fingerprint expert with the Metropolitan Nashville Police Department, testified that he examined the fingerprints lifted from the scene. He compared a fingerprint lifted from the windowsill with the Defendant's fingerprint and concluded that the two prints matched.

Detective Suzanne Stephens returned to the stand and stated that she administered the photographic line-up to Rosheka Alexander and aided in conducting the physical line-up at which both Clara Bumphus and Rosheka Alexander identified the Defendant as the man who raped them. Stephens verified that Alexander identified the Defendant as her attacker at both the physical line-up and at the photographic line-up. She also testified that the two victims were not allowed to speak to one another during the physical line-up.

Mayfield, 2001 WL 637700 at **2-4. The state courts' other factual findings are set forth in the context of Petitioner's specific claims.

## D.  Conclusions of Law

Petitioner's habeas petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Lindh v. Murphy, 521 U.S. 320, 336 (1997). Under the AEDPA, federal courts may not grant habeas relief for claims adjudicated on their merits in a state court proceeding, unless that state court proceeding:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362, 413 (2000), the Supreme Court stated that a state court judgment is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court on a set of materially indistinguishable facts." The Supreme Court interpreted the language "clearly established Federal law, as determined by the Supreme Court of the United States" as referring to "holdings, as opposed to dicta" of its decisions "as of the time of the relevant state-court decision." Id. at 412. In Bell v. Cone, 535 U.S. 685, 693 (2002), the Court reiterated that AEDPA modified a federal court's role in reviewing state prisoner applications "in order to prevent federal habeas 'retrials' and to ensure that state court convictions are given effect to the extent possible under the law."

Under the "unreasonable application" clause, a state court judgment results in an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." Id. The Supreme Court explained that a state court's application of clearly established federal law must be "objectively unreasonable," and a federal habeas court may not grant habeas relief "simply because that court concludes in its independent judgment that the relevant decision applied clearly established federal law erroneously or

13

incorrectly. Rather, that application must also be unreasonable." Id. at 411. A state court's application of federal law is unreasonable and habeas relief may be granted if the "state court decision is so clearly incorrect that it would not be debatable among reasonable jurists." Herbert v. Billy, 160 F.3d 1131, 1135 (6th Cir. 1998) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996)).

In reaching this decision, the Supreme Court reiterated that the claims were to be decided on the record before the state court. Holland, 542 U.S. at 652 (2004). The district court also "must presume that all determinations of factual issues made by the state court are correct unless the Defendant can rebut that presumption by clear and convincing evidence." Mitchell v. Mason, 325 F.3d 732, 738 (6th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1)). This presumption includes credibility findings of the state courts. Skaggs v. Parker, 235 F.3d 261, 266 (6th Cir. 2001).

### 1. Petitioner's Sentencing Claims

Petitioner asserts multiple sentencing claims: (1) that the trial court lacked the authority to allow Petitioner to withdraw his plea; (2) that the trial court improperly used Petitioner's prior convictions in imposing the 50 years sentence; (3) that the trial court's increase of Petitioner's sentence, after the withdrawal of his guilty plea, was arbitrary and vindictive in violation of the Due Process Clause of the Fourteenth Amendment ; (4) that Petitioner was improperly classified as a multiple rapist based upon the trial court's arbitrary application of state law in violation of the Due Process Clause of the Fourteenth Amendment; (5) that Petitioner's conviction as a multiple rapist violated the Double Jeopardy Clause of the Fifth Amendment; (6) that the trial court sentenced Petitioner on facts not found by the jury in violation of the Sixth Amendment

and Blakely, and (7) that Petitioner's fifty years sentence violated his crystalized expectations based upon his guilty plea sentence in violation of the Due Process Clause of the Fourteenth Amendment. For the most part, these claims allege violations of state law that Petitioner contends also proves a violation of his due process rights.

### a. Trial Court's Lack of Authority

As to whether the state trial court lacked jurisdiction to allow Petitioner to withdraw his original sentence under his plea agreement, Tenn. Code Ann. §§ 40-35-212(d) and 40-35-319(b), are the relevant state statutes. Tenn. Code Ann. § 40-35-212(d) confers a state trial court's authority to sentence a defendant up to a defendant's transfer to the Department of Corrections.

> [T]he court shall retain full jurisdiction over a defendant sentenced to the department during the time the defendant is being housed in a local jail or workhouse awaiting transfer to the department. The jurisdiction shall continue until the defendant is actually transferred to the physical custody of the department.

Tenn. Code Ann. § 40-35-319(b) provides: "Except as provided in § 40-35-212(d) or rule 35(b) of the Tennessee Rules of Criminal Procedure, once the judgment becomes final in the trial court, the court shall have no jurisdiction or authority to change the sentence in any manner."

Petitioner's claim that the trial court lacked the authority to "modify" his original sentence, is an improper characterization of events. The trial court allowed Petitioner to withdraw his guilty plea rather than accept a legal sentence to which he had not agreed. In his motion to withdraw plea, Petitioner asserted that he "should be afforded the opportunity to withdraw his plea of guilty and proceed to trial on the charges." (Docket Entry No. 72-1 at 11).

15

The Tennessee Court of Criminal Appeals considered the merits of this sentencing claim

on the trial court's lack of authority:

> The argument that the Davidson County Criminal Court was without authority in 1999 to set aside his 1993 pleas of guilty and then try him on the indictments previously has been rejected by two different panels of this court. In Andre Lamont Mayfield, 2005 WL 1683498, at *1, this court recounted that the petitioner had filed a petition for writ of habeas corpus on January 16, 2004, claiming, inter alia, that his 1999 judgments were void because the trial court had lacked subject matter and personal jurisdiction and that the 1999 convictions constituted double jeopardy and violated his right to due process. As the court explained, these claims were without merit:
>
> > The petitioner ... contends that the trial court was without jurisdiction to grant the motion to withdraw the prior guilty pleas because the previous judgments had become final, as thirty days had passed since their entry. See Boyd v. State, 51 S.W.3d 206, 210 (Tenn.Crim.App.2000). **However, it is well-settled that "a trial judge may correct an illegal, as opposed to an erroneous sentence at any time, even if it has become final."** State v. Burkhart, 566 S.W.2d 871, 873 (Tenn.1978). In the present case, **the trial court properly recognized that the plea agreement between the petitioner and the State was in direct contravention of a statute, thereby rendering it illegal and void.** See Mark L. Grimes v. Fred Rainey, No. W2002-01583-CCA-R3-CO, 2003 Tenn.Crim.App. LEXIS 688, 2003 WL 21878530 (Tenn.Crim.App., at Jackson, Aug. 5, 2003).
>
> Id. at *2. This opinion was released on July 18, 2005. On July 29, 2005, in Andre L. Mayfield v. Howard Carlton, No. E2005-00138-CCA-R3-HC, 2005 WL 1798636 (Tenn.Crim.App. July 29, 2005), perm. to appeal denied (Tenn. Dec. 19, 2005), a different panel of this court, considering the same claims, reached a conclusion identical to that of the decision two weeks earlier, namely that the petitioner's complaints about his resentencing were without merit:
> In the case herein, the petitioner moved to withdraw his guilty pleas based on the premise that the sentence he agreed to was, in effect, an illegal sentence. Though the judgment was final at the time, the trial court had jurisdiction to allow the petitioner to withdraw his plea because the judgment was illegal and void. The petitioner received a trial and his sentence and convictions were affirmed on direct appeal. See Andre L. Mayfield, 2001 WL 637700, at 15. While the petitioner is surely dissatisfied that his sentence was increased from twenty (20) to fifty (50)

16

years, there is no proof in the record that the judgment is void such that would
warrant habeas corpus relief. This issue is without merit.
Id. at *4.

Thus, two separate panels of this court have found to be without merit the
petitioner's claim that the Davidson County Criminal Court was without authority
in 1999 to allow withdrawal of his pleas of guilty to the 1993 charges. The post-
conviction court, likewise, concluded his 1993 sentences were illegal and could
not stand, as do we. Thus, he was not prejudiced by post-conviction counsel
number one filing a motion to withdraw the guilty pleas.

Mayfield, 2006 WL 2380615 at *6 (emphasis added).

For state sentencing claims in federal habeas actions, in Whalen v. United States, 445

U.S. 684, 689 n.3 (1980), the Supreme Court explained that as a general rule "within our federal

constitutional framework the legislative power [includes] the power to define criminal offenses

and to proscribe the punishments to be imposed upon those found guilty of them," but that:

"[t]his is not to say that there are not Constitutional limitations upon this power."

Under Tennessee case law, "a trial judge may correct an illegal, as opposed to a merely

erroneous sentence at any time, even if it has become final." State v. Burkhart, 566 S.W.2d 871,

873 (Tenn. 1978). Petitioner cites the Tennessee statutes quoted supra and Tennessee Rules of

Criminal Procedure to contend that the trial court lacked authority to alter his guilty plea

sentence. Yet, there was not any alteration of Petitioner's sentence as Petitioner moved to

withdraw his guilty plea. To be sure, the Supreme Court has held that federal rules can withdraw

a federal court's inherent authority, Carlisle v. United Sates, 517 U.S. 416, 425-26 (1996), but the

Tennessee Supreme Court's decisions vest state trial court's with such authority. In any event,

the Tennessee legislature has not altered these state statutes or rules since Burkhart and earlier

precedents, to divest a Tennessee court's exercise of its inherent authority to remedy an illegal

sentence.  The Court concludes that this claim involves a question of state law and the Tennessee

appellate court reasonably resolved this claim based upon Tennessee precedents.

### b. Improper Sentence Enhancements

These claims are, in essence, that the trial court improperly enhanced Petitioner's

sentence for (1) his use of a weapon, (2) his violation of his probation for a prior conviction, (3)

sentencing him as a Multiple rapist based upon his conviction of the first rape; (4) imposing a

consecutive sentences; (5) engaging in judicial vindictiveness in increasing his sentence after the

jury trial; (6) violating the Double Jeopardy Clause; (7) violating Petitioner's crystallized

expectations based upon his original sentence; and violating Blakely.

The Tennessee Court of Criminal Appeals corrected the state trial court's sentence

enhancement for Petitioner's use of a weapon in the rapes and concluded that any error did not

impact Petitioner's sentence:

> Turning now to the application of enhancement factors in this case, we note that
> Tennessee Code Annotated § 40-35-114 prohibits application of enhancement
> factors which are "essential elements of the offense as charged in the indictment."
> **Because the use of a deadly weapon is an essential element of aggravated
> rape and aggravated robbery, we conclude that this factor was erroneously
> applied with regard to those two offenses. However, we conclude that the
> enhancement factors were otherwise properly applied in this case. The
> Defendant's presentence report indicates that the Defendant was previously
> convicted of several other offenses, including second degree burglary, false
> reports, criminal impersonation, receiving stolen property, and aggravated
> robbery. In addition, the record indicates that the Defendant committed the
> offenses in this case while he was on probation for prior convictions. We
> therefore conclude that the trial court properly applied sufficient
> enhancement factors to support enhancement of all sentences in this case.**

Mayfield, 2001 WL 637700 at *13 (emphasis added) (footnote omitted).

As to the trial court's enhancing Petitioner's sentence for his violation of the conditions of his probation based upon his earlier conviction, the Tennessee appellate court found that "the defendant committed the offenses in this case while he was on probation for prior convictions. We therefore conclude that the trial court properly applied sufficient enhancement factors to support enhancement of all sentences in this case." Id. Tenn. Code Ann. § 40-35-114(13) authorizes enhancement of a sentence where the felony was committed while on probation. This claim is wholly without merit.

The Tennessee appellate court rejected Petitioner's claim for an improper consecutive sentencing:

> It is within the sound discretion of the trial court whether or not an offender should be sentenced consecutively or concurrently. State v. James, 688 S.W.2d 463, 465 (Tenn.Crim.App.1984). A court may order multiple sentences to run consecutively if it finds by a preponderance of the evidence that the Defendant fits into one of the categories established in the statute. See Tenn.Code Ann. § 40-35-115(b). This Court has held that an extensive history of criminal activity is enough to support consecutive sentencing. State v. Adams, 973 S.W.2d 224, 231 (Tenn.Crim.App.1997).
>
> In sentencing the Defendant, the trial court found that the Defendant "is a professional criminal who has knowingly devoted [his] life to criminal acts as a major source of livelihood," Tenn.Code Ann. § 40-35-115(b)(1), that the Defendant "is an offender whose record of criminal activity is extensive," id. § 40-35-115(b)(2), and that the Defendant "is sentenced for an offense while on probation." Id. § 40-35-115(b)(6). We agree with these findings by the trial court. The presentence report in this case indicates that the Defendant, who was twenty-two at the time he committed the offenses in this case, was convicted of numerous prior offenses, including four felony convictions, beginning at the time he was seventeen years old. In addition, the Defendant reported that he maintained employment only from 1988 until 1989 and from September 1992 until November 1992; no other employment history is included in the presentence report. Finally, the record indicates that the Defendant committed the offenses in this case while on probation for previous convictions. We therefore conclude that the record in this case supports the imposition of consecutive sentences.

19

Mayfield, 2001 WL 637700 at *14.  The Court deems this claim to be meritless.

As to the trial court's sentence of fifteen years for the rape of Alexander, the Court of Criminal Appeals found error in part, but without any impact on Petitioner's sentence under Tennessee law:

> **The trial court, however, erred by sentencing the Defendant to fifteen years as a Range I offender for the rape of victim Rosheka Alexander. As previously stated, rape is a Class B felony, id. § 39-13-503(b), and the sentencing range for a Range I offender convicted of a Class B felony is between eight and twelve years. Id. § 40-35-112(a)(1). Nevertheless, the record in this case supports classification of the Defendant as a Range II offender for this offense. A Range II "multiple offender" is defined, in pertinent part, as a defendant who has received "[a] minimum of two (2) but not more than four (4) prior felony convictions within the conviction class, or within the next two (2) lower felony classes...." Id. § 40-35-106(a)(1). Because of the Defendant's prior criminal history, stated above, we conclude that the trial court should have sentenced the Defendant as a Range II offender for the rape of victim Rosheka Alexander. The sentencing range for a Range II offender convicted of a Class B felony is between twelve and twenty years. Id. § 40-35-112(b)(2).** We thus conclude that the sentence of fifteen years imposed by the trial court for this offense falls within the proper sentencing range for a Range II offender and is adequately supported by the record.

Mayfield, 2001 WL 637700 at *14 (emphasis added). This claim is without merit.

On his sentence as a multiple rapist for his rape convictions, Tenn. Code Ann. § 39-13-523(a)(2) (2006) defines "multiple rapist":

> "Multiple rapist" means a person convicted two (2) or more times of violating the provisions of § 39-13-502 [(aggravated rape)] or § 39-13-503 [(rape)], or a person convicted at least one (1) time of violating § 39-13-502 [(aggravated rape)], and at least one (1) time of § 39-13-503 [(rape)].

Tenn. Code Ann. § 39-13-523(b) states: "Notwithstanding any other provision of law to the contrary, a multiple rapist or a child rapist, as defined in subsection (a), shall be required to serve

20

the entire sentence imposed by the court, undiminished by any sentence reduction credits the person may be eligible for or earn."

The Tennessee Court of Criminal Appeals explained this claim to be meritless under state law:

> The petitioner contends that his sentence as a multiple rapist on count three (3) is void and in direct contravention of Tennessee Code Annotated section 39-13-523(a)(2). Specifically, he argues that this was his "first rape offense conviction ever, and the statute only applies to a second or subsequent rape conviction." He cites State v. Johnson, 970 S.W.2d 500, 505 (Tenn.Crim.App.1996), to support his argument.
>
> The State counters that the petitioner was properly classified as a multiple rapist. Tennessee Code Annotated section 39-13-523(a)(2) defines a multiple rapist as "a person convicted two (2) or more times of violating the provisions of § 39-13-502 or § 39-13-503, or a person convicted at least one (1) time of violating § 39-13-502, and at least one time of § 39-13-503." Classification as a multiple rapist requires a defendant to serve "the entire sentence imposed by the court undiminished by any sentence reduction credits such person may be eligible for or earn." Tenn. Code Ann. § 39-13-523(b).
>
> In State v. Johnson, the defendant was convicted of a rape prior to the enactment of the 1992 statute mandating service of the entire sentence for a multiple rapist. This Court determined that the 1992 statute applied as long as one (1) of the rape offenses at issue was committed after the enactment of the law. Johnson, 970 S.W.2d at 505. In the case herein, the **petitioner was convicted of one (1) count of aggravated rape and one (1) count of rape, both occurring after the enactment of the 1992 statute mandating service of the entire sentence for a multiple rapist. The petitioner clearly qualifies as a multiple rapist as he was convicted of two (2) rape offenses as required by the statute. The petitioner's classification as a multiple rapist does not result in a void judgment. This issue is without meri.**

Mayfield, 2005 WL 1798636 at *2-3 (emphasis added).

Because the state courts' decisions are supported by state law, the Court concludes that these sentencing claims do not violate Petitioner's federal due process rights.

21

Petitioner's next sentencing claim is that the trial court's imposition of two sentences to be served at one hundred percent as evidence of judicial vindictiveness. As stated earlier, there are constitutional limitations under the Due Process Clause of the Fourteenth Amendment, and a state court's imposition of an increased sentence upon retrial after a successful appeal is one such limitation. North Carolina v. Pearce, 395 U.S. 711, 723-26 (1969). The constitutional concern is vindictiveness for pursuing a legal right. Id. A presumption of vindictiveness rises for imposing an increased penalty after a retrial. United States v. Goodwin, 457 U.S. 368, 381 (1982). In Wasman v. United States, 468 U.S. 559, 572 (1984), the Supreme Court modified the Pearce holding by stating that: "We hold that after retrial and conviction following a defendant's successful appeal, a sentencing authority may justify an increased sentence by affirmatively identifying relevant conduct or events that occurred subsequent to the original sentencing proceedings." Accord Texas v. McCullough, 475 U.S. 134 (1986) (sentence increased on retrial to fifty years from twenty years affirmed).

Yet, the Pearce presumption does not apply where the prior sentence was based upon a guilty plea. Alabama v. Smith, 490 U.S. 794, 891 (1989) ("[W]hen a greater penalty is imposed after a trial than was imposed after a prior guilty plea, the increase in sentence is not more likely than not attributable to the vindictiveness on the part of the sentencing judge. **Even when the same judge imposes both sentences, the relevant sentencing information available to the judge after the plea considerably less than that available after a trial")** (emphasis added).

Here, Petitioner's original sentence was based upon his guilty plea to an illegal sentence under Tennessee law. Petitioner elected to withdraw his guilty plea that was the basis for that

22

illegal sentence. Under Smith, because Petitioner's current sentence was based upon his decision to withdraw his guilty plea, this claim lacks merit. Further, the Tennessee appellate court's corective rulings on sentencing precludes a conclusion of judicial vindictiveness.

As to Petitioner's other sentencing related claims, given the Petitioner's withdrawal of his guilty plea, there is not any Double Jeopardy Clause violations, where as here, the Defendant decided to withdraw his guilty plea. Ricketts v. Adamson, 483 U.S. 1, 10 (1987)

For his crystalized exception/due process claim, habeas relief must be based upon "clearly established Federal law, as determined by the Supreme Court of the United States" as referring to "holdings, as opposed to dicta" of its decisions "as of the time of the relevant state-court decision." Williams. 529 U.S. at 412. No such precedent is cited here.

As to Petitioner's Blakely claim, the Sixth Circuit has determined that Blakely does not apply retroactively to cases pending on collateral review. Humphress v. United States, 398 F.3d 855, 863 (6th Cir.2005). That claim lacks merit.

### c. Severance Claim

Petitioner's next claim is predicated upon the State's alleged presentation of inaccurate evidence on his motion to sever the charged offenses. (Docket Entry No. 75 at p. 4). The state trial court partially granted and partially denied the Petitioner's motion to sever, limiting trial to the alleged kidnappings, robberies and rapes to Clara Bumphus and Rosheka Alexander. For that decision, the state trial court's findings were:

> The Court finds that they are signature, one with the other; that's the Bumphus-Minor and Alexander crimes. A common weapon was used. A common tact, rape. A common penial-vaginal rape. Both were in East Nashville in close proximity, both were in close approximate time, both during the day, both victims

23

were walking alone, both approaches were made from behind, both defendants
were threatened with a gun or threatened to be killed. Those are common. They
have a common signature. Those will not be severed. They will remain joined.

(Docket Entry No. 72-2 at p. 30).

In affirming this trial court's ruling, the Tennessee Court of Criminal Appeals cited

Tennessee law and reasoned:

> In this case, the trial court concluded that offenses against Clara Bumphus and
> those against Rosheka Alexander were signature crimes and therefore denied the
> Defendant's motion to sever. In doing so, the trial court noted that the crimes
> against the two women involved "penile-vaginal rape," that a common weapon
> was used, and that both occurred "in East Nashville in close proximity, ... during
> the day." The court also noted that "both victims were walking alone ... [and that]
> both [victims] were threatened with a gun or threatened to be killed." In addition,
> we note that the victims, who were both young females, were taken through alleys
> to abandoned houses, where they were raped. We agree with the trial court's
> finding that the two crimes in this case are similar enough to constitute signature
> crimes. We further conclude that because the identity of the perpetrator is a
> material issue in this case, evidence of each of the crimes in this case "would be
> admissible upon the trial of the others," Tenn.R.Crim.P. 14(b)(1), to establish
> identity. See McCary, 922 S.W.2d at 514 (Tenn.1996); Moore, 6 S.W.3d at 239
> (stating that offenses that are part of a common scheme or plan are typically
> offered to establish the identity of the perpetrator). We therefore conclude that the
> trial court did not abuse its discretion in denying the Defendant's motion to sever
> the two offenses for trial purposes.

Mayfield, 2001 WL 637700 at *5.

In the state appellate courts, Petitioner's argument on severance was ten pages, but failed

to cite any federal case law, save a generic reference to the Due Process Clause:

> The consideration of evidence of the crime in Bumphus taken together with the
> evidence in the Alexander case was unfairly prejudicial and as a result, Defendant
> has been deprived of his right to a fair trial as protected by the Sixth and
> Fourteenth Amendments of the United States Constitution and Article I, §§ 6 and

24

8 of the Constitution of the State of Tennessee. One case tainted the evidence in
the other to the extent that both cases should be reversed and remanded for a new
trial.

(Docket Entry No. 56-1, pp. 32-33).

In Gray v. Netherland, 518 U.S. 152, 163 (1996), the Supreme Court addressed the

requirement for a habeas petitioner to present the federal claim first to the state courts: "We have

also indicated that it is not enough to make a general appeal to a constitutional guarantee as broad

as due process to present the 'substance' of such a claim to a state court." Thus, the Court

concludes that this claim is procedurally defaulted.

Tenn. Ct. Crim. App. R. 10(b) provides that "[i]ssues which are not supported by

argument, citation to authorities, or appropriate references to the record will be treated as waived

in this court." See also State v. Schafer, 973 S.W.2d 269, 278-279 (Tenn. Crim. App. 1997).

This Tennessee rule has been held to satisfy the requirements for a procedural default.

Middlebrooks v. Bell, 619 F.3d 526, 536 (6th Cir. 2010). There is not any showing of cause or

prejudice for this default.

For these reasons, the Court concludes that Petitioner's severance claims fail to state

grounds for habeas relief.

### 3. Ineffective Assistance of Counsel Claims

In Petitioner's several state post-conviction and habeas actions, the Tennessee Court of

Criminal Appeals found the following facts about Petitioner's several trial counsel.

At the combined evidentiary hearing for both petitions, post-conviction counsel
number one, who had represented the petitioner at the time of the withdrawal of
his 1993 pleas of guilty, testified that he had received a letter from the Department

25

of Correction saying that at least three of the petitioner's sentences were to be served at 100%. **The petitioner then both telephoned and wrote counsel, saying he wanted to withdraw his pleas of guilty. Counsel filed a motion to this effect but advised the petitioner against withdrawing the pleas of guilty, explaining that he wanted to see if the trial court would order the Department of Correction to honor the judgments which had been imposed. Counsel said that he had been practicing criminal law for the past twenty-eight years.**

**Post-conviction counsel number two**, who had been appointed to represent the petitioner at the 1999 trial of his 1993 indictments, **testified that he had advised the petitioner of his right to testify at the trial and that the petitioner waived his right to do so. He said they discussed whether the petitioner should testify and, at the time, it was not required that a defendant testify, out of the presence of the jury, that he did not wish to testify at the trial**. Counsel said that, at the time of the petitioner's trials, he had been practicing law for eighteen years and had tried serious felonies "[a] number of times as [a] prosecutor and as a defense attorney." He said that he had filed a motion to sever the indictments and was successful as to one of the counts. He said that **he "encouraged" the petitioner not to testify, and the petitioner "begrudgingly" agreed. The petitioner "had a number of motions that were frivolous or motions he wanted [counsel] to file that were not good faith and within the law," and counsel refused to do so. He said that, ultimately, he filed a blanket motion "raising all of [the petitioner's] issues." Following several disputes with counsel, the petitioner "finally got mad and refused to come out of the holding cell so [the trial] had to proceed without him."**

Elizabeth Ryan testified that she was senior counsel for the Office of the Tennessee Attorney General and detailed the many legal actions which had been brought by the petitioner.

**Counsel who had represented the petitioner in the appeal of his 1999 convictions** testified that the petitioner wanted him to argue on appeal that the State could not refuse to honor the 1993 pleas of guilty, but he declined to do so, explaining that "for me to continue to press that argument to the court of appeals would be like going in front of a panel of scientists and trying to legitimately argue that the world was flat." **Counsel said that the problems with the petitioner's testifying at trial were that he was a convicted felon and his "demeanor would be his worst enemy."**

26

The petitioner testified that he did not tell post-conviction counsel number one that he wanted to withdraw his 1993 pleas of guilty and that the motion to do so was filed without his consent. He said that he told counsel who represented him at his 1999 trial that he wanted to testify and that he and counsel had gotten into a "verbal and physical altercation" over this. Counsel told him to "shut up and sit down." The petitioner testified that he should not have been sentenced as a multiple rapist. He said that counsel who appealed the convictions should have argued that the court was without jurisdiction to allow his 1993 pleas of guilty to be withdrawn.

**Defense co-counsel at the petitioner's 1993 trial testified that the defense strategy had been to attack the credibility of the victims, and he had tried to suggest that one of the victims might have been at the scene to purchase drugs.**

\*    \*    \*

### Alleged Failure of the Court to Rule on Certain Allegations

The petitioner argues that the post-conviction court did not rule on grounds I-IV, set out In the post-conviction petition filed on October 30, 2002. We disagree with this claim. The post-conviction court did, in fact, rule on all of the petitioner's claims. We note that their repetitive nature and inclusion of nearly identical claims in both petitions do not facilitate review by a court. This claim is without merit.

\*    \*    \*

The petitioner argues that he was denied the right to testify at his 1999 trial. As we have set out, post-conviction counsel number two, who represented the petitioner at this trial, testified that he advised the petitioner of his right to testify but advised he not do so because of his prior convictions. In its findings, the post-conviction court correctly noted that our supreme court's opinion in <u>Momon v. State</u>, 18 S.W.3d 152, 162-63 (Tenn. 1999), was not released until after the petitioner's trial. Thus, at the time of the trial, it was not required that the court conduct a hearing in this regard. The post-conviction court accredited the testimony of post-conviction counsel number two that the petitioner himself made the final decision that he would not testify. The record on appeal supports this conclusion.

<u>Mayfield,</u> 2006 WL 2380615 at * 3-4, 7, 9) (emphasis added).

To evaluate these claims, the petitioner bears the burden of establishing his claim of

27

ineffective assistance of counsel beyond a preponderance of the evidence. <u>Strickland v.</u>

<u>Washington</u>, 466 U.S. 668 (1984). To prevail on a claim of ineffective assistance of counsel, a

petitioner must demonstrate:

> First, . . . that counsel's performance was deficient. This requires showing that
> counsel made errors so serious that counsel was not functioning as the 'counsel'
> guaranteed the defendant by the Sixth Amendment. Second, the defendant must
> show that the deficient performance prejudiced the defense. This requires showing
> that counsel's errors were so serious as to deprive the defendant of a fair
> trial. a trial whose result is reliable.

<u>Id.</u> at 687.

The standard for reviewing an attorney's performance is that of a reasonably

effective counsel considering all of the circumstances. <u>Id.</u> at 688. Accordingly, "[j]udicial

scrutiny of counsel's performance must be highly deferential," for "it is all too easy for a court,

examining counsel's [performance] . . . after it has proved unsuccessful, to conclude that a

particular act or mission of counsel was unreasonable." <u>Id.</u> at 689. The "court must indulge a

strong presumption that counsel's conduct falls within the wide range of reasonable professional

assistance." <u>Id.</u> This is particularly true for tactical or strategic decisions. <u>Id.</u> at 690-91. To

prove prejudice, defendant "must show a reasonable probability that, but for his attorney's errors,

the proceedings would have produced a different result." <u>Ross v. United States</u>, 339 F.3d

483,492 (6th Cir. 2003); <u>see also</u> <u>Olden v. United States</u>, 224 F.3d 561, 565 (6th Cir. 2000).

To establish that his counsel's performance was deficient under <u>Strickland</u>, a movant

"must identify acts that were 'outside the wide range of professionally competent assistance.'"

<u>Smith v. United States</u>, 348 F.3d 545,551 (6th Cir. 2003) (quoting <u>Strickland</u>, 466 U.S. at 690).

In evaluating whether a Movant's counsel satisfied the Sixth Amendment standards, "[i]t will

28

generally be appropriate for a reviewing court to assess counsel's overall performance throughout the case in order to determine whether the 'identified acts or omissions' overcome the presumption that a counsel rendered reasonable professional assistance." Kimmelman v. Morrison, 477 U.S. 365, 386 (1986), (quoting Strickland, 466 U.S. at 690).

Respondent asserts that Petitioner's claim that his first trial counsel failed to advise him of the full range of options available other than to withdraw his pleas for a retrial of his offenses, is procedurally defaulted. Petitioner argues that this claim is included within the state court's claim that his first counsel failed to challenge the trial court's jurisdiction to alter the sentence or to protect the petitioner's right against double jeopardy. The post-conviction court ruled on Petitioner's claims about his first counsel.

> The petitioner . . . contends that Mr. Alderman was ineffective for failing to challenge the jurisdiction of the trial court in withdrawing his plea based on the fact that his sentence was not illegal and withdrawal of his plea was not possible. Mr. Alderman testified at the evidentiary hearing that the petitioner called him and requested that such plea be withdrawn, however, petitioner denies ever making such request. Mr. Alderman also testified that the petitioner had written him a letter requesting withdrawal of the guilty plea based on information gleaned from a letter to the petitioner regarding calculation of his sentence. Furthermore, Mr. Alderman recalled having told the petitioner that it was not a good idea to withdraw his plea because he could face more prison time if he was tried on the matter. Mr. Alderman stated that he attempted to convince the Court to enter an order clarifying the petitioner's sentence, but was not able to do so due to petitioner's eagerness to have his plea withdrawn.

> The credibility and weight of witnesses' testimony is to be resolved by the post-conviction court. Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). Prior to the 8-count indictment in this matter, the petitioner had a prior criminal record consisting of convictions of robbery, burglary and receiving stolen property. **The issue here essentially boils down to the veracity of the petitioner versus that of Mr. Alderman, a well-respected defense attorney who is now the Public Defender of Davidson County, Tennessee. Based on the past**

**actions of the petitioner with regard to his unwillingness to cooperate with or heed the advice of any of several attorneys who have represented him on this case, the Court is of the opinion that his credibility is quite questionable. To further add to the suspect nature of petitioner's contention, it does not make sense that an appointed attorney would take it upon himself to draft and argue a motion against the will of a defendant well after the defendant had been convicted and the matter was disposed. This issue is without merit, as the petitioner has failed to show how he was prejudiced by counsel's representation.**

(Docket Entry No. 80-1 at 111-12) (emphasis added)

As to Petitioner's claim that his trial attorney precluded him from testifying at trial, this claim is actually based upon state law, that at a criminal trial, the state trial judge must inform the defendant of his right to testify. As the state appellate court stated, that rule was not in effect at the time of Petitioner's trial.

In its findings, the post-conviction court correctly noted that our supreme court's opinion in <u>Momon v. State</u>, 18 S.W.3d 152, 162-63 (Tenn. 1999), was not released until after the petitioner's trial. Thus, at the time of the trial, it was not required that the court conduct a hearing in this regard.

<u>Mayfield,</u> 2006 WL 2380615 at * 9.

Moreover, the trial court credited the testimony of Petitioner's trial attorney that he discussed this issue with petitioner who decided not to testify:

Mr. Myrick testified that he and the petitioner had discussed the possibility of the petitioner taking the stand, but Mr. Myrick felt as though it would be detrimental to the petitioner's defense to take the stand, as petitioner would subject himself to cross-examination by the prosecution.

(Docket Entry No. 80-1 at 113). On direct appeal, the Tennessee court affirmed this

30

finding:

> The petitioner argues that he was denied the right to testify at his 1999 trial. As we have set out, post-conviction counsel number two, who represented the petitioner at this trial, testified that he advised the petitioner of his right to testify but advised he not do so because of his prior convictions.

> The post-conviction court accredited the testimony of post-conviction counsel number two that the petitioner himself made the final decision that he would not testify. The record on appeal supports this conclusion.

Mayfield, 2006 WL 2380615 at * 9

Here, the state courts concluded that the state trial court's sentencing, as modified by the state appellate court, was reasonable. This Court has deemed those rulings reasonable applications of state law. In any event, the state courts found that petitioner initiated the motion to withdraw his plea and did so contrary to the advice of his then counsel. Thus, the Court concludes that petitioner cannot demonstrate any prejudice from his counsel's alleged omissions. The state courts deemed Petitioner's counsel recollection of events regarding the withdrawal of the plea, testifying at trial and sentencing. Those credibility findins are supported by evidence and are controlling. The Court concludes that the state court reasonably determined that with the advice of his trial counsel, petitioner made a reasoned decision to withdraw his plea, and not to testify. Thus, these claims lack merit.

### d. Brady Claim

Petitioner's Brady claim is that the state prosecutor failed to disclose a police report containing exculpatory statements of one of the rape victims in Petitioner's state proceedings on this claim, the Tennessee appellate court quoted the trial court's findings and ruled as follows:

31

In the petition for writ of error <u>coram nobis</u>, Petitioner claimed that "new evidence that the State withheld from defense counsel" showed that "contrary to rape victim Rosheka Alexander's trial testimony, her assailant wore a partial cloth mask" and had a "scar on his mouth" and talked with a "stutter." Petitioner alleged that in 2007, his counsel found a copy of a police report from an interview with the victim that contained a checklist of descriptors the victim gave for the assailant. Petitioner acknowledged that the petition for writ of error <u>coram nobis</u> was untimely but argued that due process called for a tolling of the statute of limitations because the interests of Petitioner outweighed the interests of the State. Petitioner argued that the report was both exculpatory and material in that a reasonable probability exists that, had the evidence been disclosed, the result of the trial would have been different. As a result, Petitioner sought a new trial.

In December 10, 2009, the <u>coram nobis</u> court dismissed the petition. The court determined that:

**Despite the fact that some of the details listed in the field description report may not mirror the testimony of Ms. Alexander, the proof against the Petitioner in this case was overwhelming. Ms. Alexander provided the police with sufficient descriptive information to assist in the preparation of a composite sketch of her attacker and identified the Petitioner at both physical and photographic line-ups. In the vacant house where the incident occurred, fingerprints matching those of the Petitioner were found on the window sill where Ms. Alexander said the attacker exited. Prior to leaving, the assailant gave Ms. Alexander a piece of paper on which he had written his name and phone number. Furthermore, the man introduced himself as "Dray" to Ms. Alexander before kidnapping and raping her**.

....

In the opinion of the Court, the newly discovered information submitted by the Petitioner would have provided insignificant assistance in defense of the charges had it been presented at trial. The amount and quality of inculpatory evidence substantially outweighed any potentially exculpatory evidence at trial. It is no question that a jury would return the same if not worse, verdict if the matter were tried today and the Petitioner were permitted to introduce the information he recently discovered.

\*     \*     \*

Petitioner argues on appeal that he is entitled to <u>coram nobis</u> relief because the State withheld evidence that was both exculpatory and material that may have

resulted in a different judgment had the evidence been available to Petitioner at trial. The State, on the other hand, argues that Petitioner's claim under <u>Brady v. Maryland</u>, is not congnizable in a <u>coram</u> <u>nobis</u> proceeding and, in any event, the police report would not have been admissible at trial. Therefore, according to the State, the trial court did not abuse its discretion.

*   *   *

Despite Petitioner's argument being deemed a proper ground for <u>coram</u> <u>nobis</u> relief, we affirm the trial court's dismissal of the petition. Petitioner has failed to show, as required, that that the newly discovered evidence "may have resulted in a different judgment had the evidence been admitted at the previous trial." <u>Hart</u>, 911 S.W.2d at 374-75. Again, **the evidence of Petitioner's guilt was overwhelming. With respect to the rape of Rosheka Alexander, the evidence at trial indicated that Ms. Alexander "twice identified [Petitioner] before trial, at a photographic line-up and at a physical line-up, and [the State] introduced as an exhibit a composite drawing of Alexander's attacker. In addition, fingerprints found in the house where Alexander testified that the rape occurred were compared with [Petitioner's] fingerprints, and ... the prints matched." <u>Andre L. Mayfield</u>, 2001 WL 637700, at 9 Further, as noted by the trial court in the order dismissing the writ, "prior to leaving [the scene of the rape], the assailant gave Ms. Alexander a piece of paper on which he had written his name and phone number. Furthermore, the man introduced himself as "Dray" ... before kidnapping and raping her." We are unable to conclude that, had Petitioner been privy to the police report prior to trial, the evidence may have resulted in a different judgment. Petitioner is not entitled to relief. The judgment of the trial court is affirmed.**

<u>Mayfield</u>, 2010 WL 4545822 at * 2-3,4, 6-7 (emphasis added).

In <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963), the Supreme Court held that the government is required to turn over evidence in its possession that is both favorable to the accused and material to guilt or punishment. "We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Later, the Supreme Court restated the elements of a <u>Brady</u> violation. "There are

33

three components of a true <u>Brady</u> violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." <u>Strickler v. Greene</u>, 527 U.S. 263, 281-82 (1999). <u>Brady</u> extends to impeachment evidence, <u>United States v. Bagley,</u> 473 U.S. 667, 676 (1985).

In <u>Kyles v. Whitley</u>, 514 U.S. 419 (1995), the Supreme Court reiterated that <u>Brady</u> materials require disclosure of exculpatory and impeachment evidence, but such evidence must show that the result of the trial would have been different.

> [In Bagley], the Court disavowed any difference between exculpatory and impeachment evidence for <u>Brady</u> purposes, and it abandoned the distinction between the second and third <u>Agurs</u> circumstances, i.e., the "specific-request" and "general- or no-request" situations. <u>Bagley</u> held that regardless of request, favorable evidence is material, and **constitutional error results from its suppression by the government, "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."**

Id. at 433 (quoting <u>United States v. Bagley</u>, 473 U.S. 667, 682, 685 (1985) with emphasis added).

Here, the police report does contain impeachment evidence concerning the police officer's statement about one of the victim's statements referring to her assailant as wearing a half mask. This report is cited as conflicting with the victim's trial testimony that the assailant was not wearing a mask. Given that the rape occurred during daylight and the assailant took the victim to the scene of the rape and later to a bus stop where he gave the victim a note with his name and telephone number before leaving her, the Court concludes that the victim had ample opportunity to see her assailant. These facts, coupled with the Petitioner's fingerprints at the rape scene and the victim's two identifications of Petitioner from a lineup and photographic array,

34

lead the Court to conclude that that the state courts could reasonably conclude that the cited police report did not constitute material evidence that would have caused a different result at Petitioner's trial, as required by <u>Brady</u>.

For these collective reasons, the Court concludes that the Respondent's renewed motion to dismiss should be granted and Petitioner's application for the writ should be denied.

An appropriate Order is filed herewith.

**ENTERED** this the ___15___ of September, 2011.

WILLIAM J. HAYNES, JR.
United States District Judge